IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-558-FL

| | |
|---|---|
| JOHN D. PONE, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) ORDER |
| TOWN OF HOPE MILLS and MELISSA ADAMS, in her individual and personal capacity, | ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on defendants' motion to dismiss for failure to state a claim (DE 23), defendants' motion to strike second amended complaint (DE 30), and plaintiff's motion to file second amended complaint (DE 36). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted and plaintiff's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on November 20, 2018, and filed the operative amended complaint on April 17, 2019, asserting claims against defendants under 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendments to the United States Constitution and under the North Carolina Constitution, arising from plaintiff's suspension from his position as a firefighter for defendant Town of Hope Mills (the "Town"), and termination by Town Manager,

defendant Melissa Adams ("Adams").[1] Plaintiff seeks reinstatement, back pay, compensatory damages, costs, injunctive relief, and jury trial.

Defendants filed the instant motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), on May 31, 2019, relying on plaintiff's notice of termination and a Town personnel policy. Plaintiff responded to the motion to dismiss, and filed a second amended complaint on July 9, 2019. Defendants replied in support of their motion to dismiss and filed the instant motion to strike the second amended complaint on July 23, 2019.

Plaintiff responded to the motion to strike on August 15, 2019, and filed the instant motion for leave to file second amended complaint on August 16, 2019. Defendants replied in support of their motion to strike and responded in opposition to plaintiff's motion to amend on August 29, 2019.

## STATEMENT OF FACTS

The facts alleged in the operative amended complaint may be summarized as follows. Plaintiff was a firefighter for the town for approximately 13 years, from August 2004 to July 2017. He held the positions of Certified Level Two Firefighter, Acting Lieutenant, and Acting Captain. "In those positions, he commanded company firefighters and other safety care individuals; identified hazardous materials and complied with organization, healthcare and legal standards in handling, packaging and moving hazardous materials; provided direct patient care in emergency situations, ensured the safety and comfort of patients while administering emergency stabilization procedures and educated subordinates, peers and the community through training programs." (Am. Compl. ¶ 12).

---

[1] In original complaint, plaintiff named as defendant former Town Manager, John Ellis, which individual is not named in the operative amended complaint. Defendants moved to dismiss the original complaint on February 25, 2019, which motion was denied as moot due to plaintiff's filing of the operative amended complaint.

In October 2015, plaintiff "sent an anonymous letter" to the Hope Mills Town Council ("Town Council") and two candidates running for office, which addressed "Plaintiff's concerns with regards to the leadership of Deputy Chief Steve Lopez ('Chief Lopez') as a Safety Coordinator for Hope Mills and as a safety decision-maker for the Fire Department." (Id. ¶ 13). The letter, in part, stated:

> a. There is 'a lack of safety-toed boots to reduce cost, an ongoing issue with breaks on the ladder truck, integrity concerns [with the] Self Contained Brakes Apparatus being solved with electrical tape . . .'
>
> b. 'Most of the members of the fire department are members at the other Fire Departments as volunteers or employees.'
>
> c. 'In [Plaintiff s] personal opinion, the town has failed [them] as career firefighters by allowing [Chief Lopez] to continue with his reckless behavior.'
>
> d. '[Chief Lopez] is putting firefighter's career and lives in jeopardy by making priorities in cleaning the fire department rather than training. By signing names to training that were not present during the training evolution. Training is the most important thing we do outside of an actual emergency.'
>
> e. '. . . our newer member's lack of training and the level of firefight training is subpar.'
>
> f. '. . . what has been the case for years is backlash for someone choosing to speak out.'
>
> g. Plaintiff has posed questions inquiring, '. . . where does the money come from to fund the Search and Rescue Team?'
>
> h. 'Our community deserves better than this.'
>
> i. 'This fire department and the citizens of the Town of Hope Mills will suffer because of this.'

(Id. (brackets and internal quotations in original)).

On January 1, 2016, "then Hope Mills Town Manager, John Ellis, placed Plaintiff on administrative leave because he was 'going around to other firefighters asking them to sign a letter critical of Deputy Chief Lopez.'" (Id. ¶ 15). On January 5, 2016, "Fire Department officials

discovered that Plaintiff was responsible for sending the anonymous letter and discovered that Plaintiff had sent that same letter to Lieutenant Jeff Cannady." (Id. ¶ 19). "As a result of Plaintiff's distribution of the letter about Plaintiff's safety concerns, Chief Charles Hodges sent a letter to the then Hope Mills Town Manager, John Elis, recommending the termination of Plaintiff on the grounds that the failed to follow directives to refrain from discussing the matters in the October 2015 letter, and that Plaintiff had displayed 'deceitful behavior,' and 'gross insubordination.'" (Id. ¶ 20). "Plaintiff was placed on administrative leave." (Id.).

Over one year later, on February 1, 2017, human resources administrator for the town notified plaintiff that "he would be permitted to return to work a fire fighter, a lower-paying position than he held when he left as the Acting Captain of C-Shift." (Id. ¶ 21). Plaintiff was not able to return to work as scheduled because in the interim he injured himself playing basketball. Plaintiff sought and received leave under the Family Medical Leave Act from March 6, 2017 through May 30, 2017.

Plaintiff was unable to return to work at the conclusion of his medical leave because his doctor had not released him. On June 21, 2017, plaintiff's doctor released plaintiff from his care, but not to return to work until August 1, 2017. "Plaintiff was advised that there was no light duty work available for him at the Hope Mills Fire Department." (Id. ¶ 25). Plaintiff's additional medical leave was approved.

On July 24, 2017, defendant Adams, then Town Manager, sent plaintiff a letter "advising that he was being terminated because his 'work' at another fire station while he was on paid leave was in violation of Section 15 of the Town's Personnel Policy," which states as follows:

> The work of the town will take precedence over other occupational interests of employees. The town has no intention of attempting to regulate what an employee does during his own time away from the job so long as off-duty activities do not represent a conflict of interest, reflect discredit on the town or keep them from being

4

> able to perform their wok for the town. All outside employment for salaries, wages, or commission and all self-employment must be approved by the department head and recommended to the town manager for his final approval. In no case may an employee use town equipment or town property in connection with any outside employment unless expressly authorized by the town manager. Violation of the policy may be grounds for disciplinary action up to and including dismissal. Please refer to the 'use of town equipment policy' located in the administrative policies manual for specific procedural requirements.

(Id. ¶ 26).

"During Plaintiff's administrative leave between January, 2016 and March, 2017, he continued to volunteer as a Fire Fighter Captain at Grays Creek Fire Department without pay, performing administrative duties." (Id. ¶ 27). "[Y]ears earlier Plaintiff had received authorization from the Chief of the Hope Mills Fire Department to volunteer at Grays Creek Fire Department." (Id. ¶ 28). Plaintiff was not on the payroll at Grays Creek Fire Department and had never received a salary from them in the over 20 years that he had served as a volunteer firefighter for Grays Creek Fire Department.

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.   Analysis

   1.   First Amendment Claim

Plaintiff asserts that defendants violated plaintiff's First Amendment rights when they placed him on administrative leave and subsequently terminated him in retaliation for "his involvement with the letter and petition he was circulating." (Compl. ¶ 33).

A public employee must establish four elements to state a claim for deprivation of First Amendment rights flowing from an adverse employment action. "First, to trigger First Amendment protection, the speech at issue must relate to matters of public interest." Hanton v. Gilbert, 36 F.3d 4, 6 (4th Cir.1994) (citing Connick v. Myers, 461 U.S. 138, 146 (1983)). Second, the "employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace." Hanton, 36 F.3d at 6–7 (citing Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois, 391 U.S. 563, 568 (1968)). "Third, the employee must establish . . . that he was deprived of a valuable government benefit or adversely affected in a manner that, at the very least, would tend to chill his exercise of First Amendment rights." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 352 (4th Cir. 2000). "Finally, the employee 'must establish a causal relationship between the protected expression and the retaliation: that the protected speech was a 'substantial factor' in the decision to take the allegedly retaliatory action.'" Id. (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 248 (4th Cir.1999)).

Defendants assert plaintiff fails to state a claim against them on several grounds. The court addresses each defendant in turn.

a. Defendant Adams

Plaintiff's First Amendment claim against defendant Adams fails as a matter of law most significantly on the third and fourth elements of the claim. As an initial matter, defendant Adams had no alleged role in plaintiff's suspension in January 2016. Thus, plaintiff has not alleged that defendant Adams took any action, with respect to the suspension, that "adversely affected" plaintiff's employment benefits. Goldstein, 218 F.3d at 352. Indeed plaintiff does not assert in response to motion to dismiss any basis for maintaining this portion of his claim against defendant Adams.

Next, with respect to plaintiff's termination, plaintiff has not alleged any facts plausibly permitting an inference of "a causal relationship between the protected expression and the retaliation: that the protected speech was a substantial factor in the decision to take the allegedly retaliatory action." Id. (quotations omitted). According to the amended complaint, plaintiff was suspended in January 2016 for allegedly circulating a letter in October 2015, and for other communications made in and up to January 2016. (See Am. Compl. ¶¶ 13, 15, 19-20). Plaintiff was placed on administrative leave for over one year, was first allowed to return to work as a firefighter, and then was twice granted medical leave in March and June 2017. (See id. ¶¶ 21-25). Because nearly a year and a half passed from the initiation of plaintiff's suspension to the termination, with intervening employment actions and a change in identity of Town Manager, the facts alleged do not permit an inference that defendant Adams, on behalf of defendant Town, terminated plaintiff due to his exercise of First Amendment rights in and before January 2016. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection

7

exists between the two."). In addition to the timing of the decision, and intervening employment actions, there is nothing alleged about the reasons for the termination or the manner in which the termination was communicated giving rise to a plausible inference of a causal connection. Defendant Adams advised plaintiff "that he was being terminated because his 'work' at another fire station while he was on paid leave" was in violation of the Town's personnel policy. (Id. ¶ 26). Plaintiff's termination, thus, related on its face to plaintiff being out on medical leave for the Town, while engaging in "'work' at another fire station." (Id.). Thus the context of the termination does not give rise to a plausible inference of a causal link between plaintiff's conduct and the period prior to his administrative leave. See, e.g., Goldstein, 218 F.3d at 356 (finding no inference of causal connection where suspending entity "articulated a basis for the suspension separate and independent from protected speech").

Plaintiff suggests that because he was previously authorized to do volunteer work at another fire department, the alleged justification for the termination is incorrect. The alleged reason for the termination, however, was not only engaging in volunteer work, but also doing so while representing to be out on paid medical leave for the Town. (Id.; see also Def's Resp. Ex. 1).² Plaintiff also suggests that he actually had ability to do administrative volunteer work, but could not return to duty for the Town. (See Am. Compl. ¶¶ 25, 27, 30). This is insufficient to give rise to an inference defendant Adams did not honestly believe the reasons given for termination, however, particularly given the intervening time and actions between the termination and plaintiff's speech in 2015 and January 2016. See, e.g., Goldstein, 218 F.3d at 357 (noting

---

² Where plaintiff expressly references in his complaint the July 24, 2017, termination letter sent by defendant Adams to plaintiff, and this letter is integral to plaintiff's termination claim, (see Am. Compl. ¶ 26), and not disputed as inauthentic, the court considers it also in ruling on the motion to dismiss. In the letter, defendant Adams states "Your representations to the Town that you were unable to return to work, while at the same time performing work for another Fire Department, is a serious violation of the Town's trust." (DE 24-1).

8

defendants "need not have been correct in their apprehension of the facts underlying the articulated justifications" for a termination, so long as "held honestly and in good faith").

In sum, plaintiff fails to allege essential elements of his First Amendment claim against defendant Adams. Therefore, this claim fails as a matter of law and must be dismissed.[3]

      b.    Defendant Town

"[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469-70 (4th Cir. 2013) (quoting Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978)); see Walker v. Prince George's Cty., MD, 575 F.3d 426, 431 (4th Cir. 2009) ("[A] municipality's liability arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom.") (internal quotations omitted).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)). "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards v. City of Goldsboro, 178 F.3d 231, 244-45 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987)). In addition, municipal policy may include "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011)

---

[3]    Because dismissal is warranted on this basis, the court does not reach defendant's argument that plaintiff's alleged speech did not concern a matter of public interest, or that defendant Adams is entitled to qualified immunity.

9

Nevertheless, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

Plaintiff's First Amendment claim against the Town fails as a matter of law because plaintiff has not alleged he was injured by an unconstitutional policy or custom of the Town. As an initial matter, with respect to plaintiff's termination, where plaintiff has not alleged a claim against defendant Adams, plaintiff's claim against the Town based upon conduct of Adams necessarily must fail. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Knight Estate of Graham v. City of Fayetteville, 234 F. Supp. 3d 669, 692 (E.D.N.C. 2017).

With respect to plaintiff's administrative leave, plaintiff has not alleged such placement on leave, being a single alleged unconstitutional activity applied to him, was caused by a municipal policy that is "itself unconstitutional." Tuttle, 471 U.S. at 824. Plaintiff alleges he was placed on administrative leave starting on January 1, 2016, by then Town Manager, John Ellis, because plaintiff was "going around to other firefighters asking them to sign a letter critical of Deputy Chief Lopez." (Am. Compl. ¶ 15). Plaintiff also alleges that he was continued on administrative leave after Chief Charles Hodges recommended termination on the ground that plaintiff "failed to follow directives to refrain from discussing the matters in the October 2015 letter," and displayed

"deceitful behavior" and "gross insubordination." (Id. ¶ 20). These allegations, however, do not permit an inference of an existing unconstitutional policy of the Town.

Plaintiff alleges that the Town "delegated all personnel actions to the Town Manager," and that the "Town Manager made decisions regarding personnel on behalf of the Town." (Id. ¶ 7). Plaintiff also notes that North Carolina law requires a Town Manager to exercise its delegated authority "in accordance with such general personnel policies or ordinances as the Council may adopt." (Id.). However, there is nothing, in itself, unconstitutional about either of these policies or procedural practices.

Plaintiff does not point to any facts permitting an inference that the alleged act of suspension against plaintiff was taken pursuant to an established Town policy or practice. He argues in his brief in opposition to dismissal that "the acts complained of represent the official policy of the City." (Pl's Mem. (DE 28) at 12). But this conclusory assertion is not supported by citation to any alleged policies of the Town regarding suspension of a Town employee, such as plaintiff, for exercise of speech on any matter, including a matter of alleged public interest.

In addition, and in the alternative, plaintiff has not alleged an underlying constitutional violation with respect to plaintiff's administrative leave. As noted previously, to establish a First Amendment claim based upon an adverse employment action against a government employee, a plaintiff must allege, inter alia, that the "employee's interest in First Amendment expression . . . outweigh[s] the employer's interest in efficient operation of the workplace." Hanton, 36 F.3d at 6–7.

> Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of

11

the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

Grutzmacher v. Howard Cty., 851 F.3d 332, 345 (4th Cir. 2017) (quotations omitted).

Here, based upon the circumstances alleged regarding imposition of administrative leave, a combination of factors compels a determination as a matter of law that the Town's interest in efficient operation of the workplace in deciding to place plaintiff on administrative leave outweighed plaintiff's interest in First Amendment expression.[4] On the one hand, the court recognizes that the subject matter of some of the allegations voiced by plaintiff, which plausibly implicate safety and training procedures at the fire department, weighs in favor of the balance of protecting plaintiff's free speech rights. See Goldstein, 218 F.3d at 355. On the other hand, however, plaintiff's alleged expression contained direct and serious criticism of a superior, Chief Lopez, (Am. Compl. ¶ 13), and Chief Charles Hodges also sent a letter to then Town Manager alleging "deceitful behavior" and "gross insubordination" by plaintiff. (Id. ¶¶ 15, 20). These factors favor the Town's alleged decision to place plaintiff on administrative leave to address a personnel conflict. See Grutzmacher, 851 F.3d at 345 ("Carping criticism and abrasive conduct have no place in a small organization that depends upon common loyalty—harmony among coworkers") (quotations omitted).

It is also an important factor to the balancing of interests in this instance that the then Town Manager did not terminate plaintiff as recommended by the fire chief, but rather imposed only "administrative leave," and plaintiff continued on such leave for over a year until he was invited to return to work as a firefighter and then allowed to transition, at plaintiff's request, to a further extended period of medical leave. (Id. ¶¶ 21-25).

---

[4] The court assumes, without deciding, for purposes of the instant analysis that plaintiff's expression "relate[s] to matters of public interest," Hanton, 36 F.3d at 6, and thus the court does not reach defendants' arguments regarding this element of plaintiff's claims pertaining to the imposition of administrative leave.

Moreover, at the time, plaintiff was serving in a managerial position, as "Acting Captain of C-Shift," (Id. ¶ 15), with official duties bearing on safety and training programs. (Id. ¶ 12). The fact that plaintiff was himself in a managerial capacity, with official duties bearing on safety and training, but also criticizing superiors on the same topics, further weighs heavily to the Town's interest in maintaining harmony within the fire department. See Grutzmacher, 851 F.3d at 346 ("[T]he expressive activities of a highly placed supervisory employee will be more disruptive to the operation of the workplace than similar activity by a low level employee with little authority or discretion.") (quotations omitted). "[F]ire companies have a strong interest in the promotion of camaraderie and efficiency as well as internal harmony and trust, and therefore we accord substantial weight to a fire department's interest in limiting dissension and discord." Id. at 345 (quoting Goldstein, 218 F.3d at 355). Thus, a balance of the factors in the circumstances alleged compels a determination as a matter of law that the Town's interest in maintaining efficient workplace functioning by placing plaintiff on administrative leave outweighed plaintiff's First Amendment free speech interest.

In sum, plaintiff fails to allege a constitutional deprivation caused by any Town policy. In addition, and in the alternative, plaintiff's First Amendment claim against the Town fails as a matter of law. Therefore, plaintiff's First Amendment claim against the Town must be dismissed.

    2.    Fourteenth Amendment Claim

Plaintiff asserts a violation of his Fourteenth Amendment procedural due process rights, on the basis that he had "a property interest in his employment with the Town" and his termination without opportunity to be heard in advance deprived him of his property interest. (Compl. ¶¶ 51-52). Plaintiff, however, fails to allege any "statute," "ordinance," or an express or "implied contract" that creates a property interest in employment for plaintiff. Bishop v. Wood, 426 U.S.

341, 344 (1976). "[N]othing else appearing, an employment contract in North Carolina is terminable at the will of either party." Tully v. City of Wilmington, 370 N.C. 527, 539 (2018). In opposing dismissal, plaintiff points to no allegations to the contrary. Therefore, plaintiff's claim under the Fourteenth Amendment must be dismissed as a matter of law.

3. State Law Claims

Plaintiff asserts a claim under the North Carolina Constitution, Article I, Section 14, for violation of plaintiff's free speech rights. However, Article I of the North Carolina Constitution provides a direct cause of action to enforce the rights contained therein only where there is an "absence of an adequate state remedy." Corum v. Univ. of N.C., 330 N.C. 761, 782 (1992). An adequate state law remedy exists where there is a cause of action, at common law or created by statute, that provides plaintiff with "the possibility of relief" for the same injury alleged in the direct constitutional claim. Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 340 (2009).

Here, the opportunity to assert a common law claim for wrongful discharge in violation of public policy is an adequate state remedy that precludes plaintiff's direct cause of action under the North Carolina Constitution. See, e.g., Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 568-72 (1999). Plaintiff does not contend otherwise in opposing dismissal. Therefore, plaintiff's claim under the North Carolina Constitution must be dismissed as a matter of law.

4. Motion to Strike

Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleading only "once as a matter of course." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, since plaintiff had already filed an amended complaint once on April 17, 2019,

plaintiff was not permitted to file his second amended complaint on July 9, 2019, without consent of defendants or leave of court. Accordingly, where plaintiff obtained neither consent nor leave, defendants' motion to strike is granted, and the clerk is DIRECTED to strike the second amended complaint (DE 27).

5. Motion to Amend

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (quotations omitted). With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

Here, the proposed second amended complaint differs from the first amended complaint only in minor edits and additions, including in paragraphs 7, 15, 20, 33, and 40. These edits do not change the court's analysis of any of plaintiff's claims. Indeed, some of the edits clarify the facts to provide further justification for dismissal on the grounds set forth herein.

For example, the proposed second amended complaint adds the following allegation: "[w]hile Plaintiff was on administrative leave, an investigation was undertaken regarding the matters alleged in Plaintiff's letter. Upon information and belief, the Town Manager resigned in lieu of being terminated." (Prop. 2nd Am. Compl. ¶ 20). This allegation further confirms: 1) the absence of involvement by defendant Adams in imposing plaintiff's administrative leave, 2) the absence of any unconstitutional Town policy causing plaintiff's alleged injury, and 3) the utility

15

of placing plaintiff on administrative leave while the allegations in his letter could be investigated, thus further supporting balancing of interests in favor of maintaining workplace efficiency.

Other proposed additions to the second amended complaint highlighted by plaintiff in support of the instant motion are conclusory statements or recitations of elements of the claim. (See, e.g., Prop. 2nd Am. Compl. ¶ 7 ("All actions taken against Plaintiff were pursuant to these policies and represent the official policy of the Town."); ¶ 33 ("Defendants caused Plaintiff's termination because of his involvement with drafting and distribution of the letter he was circulating."); ¶ 40 ("But for Plaintiff's speech and protected activity, he would not have been placed on leave or terminated.")).

Accordingly, plaintiff's motion for leave to file second amended complaint must be denied on the basis that the proposed amendments are futile. In addition, where plaintiff twice has had the opportunity to seek leave to amend the complaint already, and those amendments have not cured the deficiencies in plaintiff's claims, plaintiff's action must be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss for failure to state a claim (DE 23) is GRANTED, defendants' motion to strike second amended complaint (DE 30) is GRANTED, and plaintiff's motion to file second amended complaint (DE 36) is DENIED. The clerk is DIRECTED to strike plaintiff's second amended complaint filed at DE 27. Plaintiff's action is DISMISSED WITH PREJUDICE. The clerk is DIRECTED to close this case.

SO ORDERED, this the 8th day of January, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge